UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-223(9) (NEB)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ABDIKADIR AINANSHE MOHAMED,<br><br>Defendant. | **GOVERNMENT'S POSITION REGARDING SENTENCING** |

The United States of America, by and through its attorneys, Daniel N. Rosen, United States Attorney for the District of Minnesota, and Rebecca E. Kline and Matthew C. Murphy, Assistant United States Attorneys, submits the following sentencing memorandum and respectfully requests that the Court impose a sentence of 63 months in prison.

Defendant Abdikadir Mohamud, along with his co-conspirators, operated a non-profit Federal Child Nutrition Program meal site, sponsored by Feeding Our Future, called Stigma-Free International. The defendant purported to run a Stigma-Free food site in Willmar, Minnesota, a small town in west-central Minnesota with a total population of approximately 21,000. The defendant opened up the Stigma-Free Willmar site in October 2020 under the sponsorship of Feeding Our Future.

Within mere weeks after creating the Stigma-Free Willmar site, the defendant falsely claimed to be serving meals to 3,000 children a day, seven days a week, from FaaFan restaurant, a small storefront restaurant in downtown Willmar. In or about October 2020, the defendant approached the owner of FaaFan Restaurant and offered

to pay him monthly to give the appearance of legitimacy that the small storefront restaurant was a food site for Stigma-Free Willmar. The defendant also created a shell company called Tunyar Trading that purported to be a meal vendor providing meals to be served at the Stigma-Free Willmar site.

During the one-year period from November 2020 to December 2021, the defendant and his co-conspirators fraudulently claimed to have served approximately 1.6 million meals at the Stigma-Free Willmar site. In support of these claims, the defendant prepared and submitted fraudulent meal count sheets and invoices. The conspirators submitted a fake attendance roster purporting to list the names and ages of approximately 2,000 children who attended the Stigma-Free Willmar site's "after-school program." The list was fake and submitted to support their fraudulent claims. More specifically, on November 3, 2021, the defendant emailed a fabricated invoice, inflated meal counts, and a falsified attendance to a co-conspirator who then emailed a corresponding fraudulent claim to Feeding Our Future for the defendant's Stigma-Free Willmar site.

Rather than use fraudulently obtained money to serve meals or feed children, the defendant and his conspirators fraudulently misappropriated much of it. The defendant transferred more than $2.5 million from Tunyar Trading to himself and other co-conspirators. Also, the defendant and other co-conspirators created another shell company called Five A's Projects LLC. The defendant and other co-conspirators together transferred more than $1 million in Federal Child Nutrition Program funds

to Five A's Projects LLC, which they used to purchase the former location of Kelly's 19th Hole, a bar and restaurant in Brooklyn Park, Minnesota.

The defendant also paid more than $225,000 in bribes and kickbacks from Tunyar Trading LLC to Abdikerm Eidleh, the Feeding Our Future employee who served as the site support manager for the Stigma-Free Willmar site, in exchange for sponsoring and facilitating Stigma-Free Willmar's fraudulent participation in the Federal Child Nutrition Program. Feeding Our Future received nearly $500,000 in administrative fees for sponsoring the Stigma-Free Willmar site's fraudulent participation in the program. In December 2021, the defendant also paid $5,750 to a GoFundMe account for Feeding Our Future created by Aimee Bock.

Ultimately, based on fraudulent claims throughout the conspiracy, the defendant and his co-conspirators caused the payout of $5,325,369 in fraudulent Federal Child Nutrition Program reimbursements for meals purportedly served to children at the Stigma-Free Willmar site.

Mohamud was charged by indictment on September 13, 2022, with conspiracy to commit wire fraud (Count 1), wire fraud (Counts 4 and 6), conspiracy to commit federal programs bribery (Count 15), federal programs bribery (Counts 29, 30, and 31), conspiracy to commit money laundering (Count 41), and money laundering (Count 55). Mohamud pleaded guilty to wire fraud (Count 4) on February 27, 2025.

## SENTENCING RECOMMENDATION

In *Gall v. United States*, the Supreme Court set forth the appropriate sentencing methodology. 552 U.S. 38, 49–50 (2007). The district court should first

calculate the advisory Sentencing Guidelines range. *Id*. at 49. After calculating a defendant's advisory Sentencing Guidelines range and hearing from the parties, the district court must then consider the sentencing factors set forth in 18 U.S.C. § 3553(a) and make an individualized assessment based on the facts in arriving at an appropriate sentence. *Id*. at 49–50; *see also United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

**A. Sentencing Guidelines Range**

The government agrees with the Guidelines calculations contemplated in the PSR. The base offense level for Count 12 is 7. PSR ¶ 103. The offense level is increased by 18 levels because the loss was between $3.5 million and $9.5 million. PSR ¶ 104. The offense level is increased by 2 levels because the defendant operated a food site through a non-profit entity and misrepresented that he was acting on behalf of a charitable or educational organization. PSR ¶ 105. The offense level is also increased by 2 levels because the offense involved fraud in connection with major disaster or emergency benefits. PSR ¶ 106. The total adjusted offense level is decreased by 3 levels pursuant to Guidelines § 3E1.1(a) and (b) because the defendant accepted responsibility in a timely manner. PSR ¶¶ 112-113. Finally, the defendant is entitled to a 2-level reduction because he meets the zero-point offender criteria set

forth in Guidelines § 4C1.1(a). PSR ¶ 111. The defendant falls into Criminal History Category I.

With a total adjusted offense level of 26, and Criminal History Category I, the defendant's advisory Guidelines range is 51-63 months in prison. PSR ¶ 157. With a total adjusted offense level of 26, and Criminal History Category I, the defendant's Guidelines fine range is $20,000 to $200,000. PSR ¶ 169.

**B. Section 3553(a) Sentencing Factors**

Section 3553(a) requires the Court to analyze several factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

**1. Nature and Circumstances of the Offense**

Mohamud participated in one of the largest fraud schemes in the history of the District of Minnesota, and the single largest Covid-19 fraud scheme in the country. He took money intended to feed children who no longer could get regular, nutritious meals at school, and used it to enhance his lifestyle. He knew she was not entitled to the money and that it was obtained by lying to the government about the number of children he allegedly served meals to. Simply put, he took advantage of a once-in-a-century global pandemic and the generosity of American taxpayers to enrich himself.

**2. History and Characteristics of the Defendant**

Mohamud was born in Ethiopia in 1992. He immigrated to Kenya with his father as a toddler and onward to the United States (and Minnesota) at age 12. He completed high school and joined the United States Navy in 2011. He served until 2015. He worked as a linguist for a military contractor in Djibouti until returning to Minnesota in 2020. Mohamud has been in a long-term relationship with his significant other since 2013 and has seven children, one of whom has medical issues. Mohamud underwent neurosurgery in May of 2026 for a brain issue. He is currently enrolled in college and works at Minnetronix Medical. Mohamud resides in Fridley with his family.

**3. Deterrence, Respect for the Law, Just Punishment, and Protecting the Public**

The Court must also consider the need for the sentence to afford adequate deterrence, promote respect for the law, provide just punishment, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

Mohamud's crime must be viewed in context of the rampant fraud that has plagued Minnesota in recent years. Unprecedented levels of fraud perpetrated on public benefits programs in Minnesota have eroded trust in the government and raised questions about the sustainability of those programs. Too many people, Mohamud included, participate in this kind of fraud because, as they see it, everyone else is doing it. This cynical view must be stopped. It has undermined and endangered

important government programs as well as legitimate nonprofit organizations that rely on donations to carry out actual charitable work.

On the other hand, Mohamud conduct appears to be an aberration in an otherwise law-abiding life. He has no criminal history points and ultimately accepted responsibility for his conduct. His behavior, as well as his age, is indicative of someone who is unlikely to recidivate.

**4. The Need to Avoid Unwanted Disparities**

Finally, the Court must consider the need to avoid unwarranted disparities. 18 U.S.C. § 3553(a). As noted in the PSR, 97 percent of defendants sentenced within the past four years under the same Guidelines provision, with the same offense level and criminal history as Mohamud, received a sentence of imprisonment. Those who were imprisoned received an average sentence of 41 months. The amount of money Mohamud received through fraud falls in the in the middle of the applicable loss bracket contained in § 2B1.1. However, given the egregious nature of the offense conduct, including, specifically, Mohamud's efforts to exploit a national crisis to enrich himself, an above average sentence is warranted.

## CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 63 months in prison.

Respectfully Submitted,

Dated: August 12, 2026

DANIEL N. ROSEN
United States Attorney

/s/ *Rebecca E. Kline*
BY: REBECCA E. KLINE
MATTHEW C. MURPHY
Assistant U.S. Attorneys